ORIGINAL

# In the United States Court of Federal Claims

No. 15-321L, 15-409L
(Filed: June 22, 2016)

**FILED**

JUN 2 2 2016

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
ABIODUN MOHN,                                 *
                                              *
              Plaintiff,                      *
                                              *
       v.                                     *
                                              *
THE UNITED STATES,                            *
                                              *
              Defendant.                      *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

---

### ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

This matter comes before the Court on Defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction or alternatively, for failure to state a claim upon which relief can be granted.[1]  Because Plaintiff has not alleged any claims within the Court's jurisdiction, this action is dismissed.

### Background[2]

Plaintiff pro se Abiodun Mohn is a United States citizen and Florida resident.  In late April or early May of 2013, Plaintiff applied to the United States Department of the Interior, Bureau of Indian Affairs ("BIA"), for a Certificate of Degree of Indian Blood - - a document issued to certify an applicant's "quantum of Indian blood."  ECF 32 Ex. 1, at 1.  Plaintiff avers that if he were recognized as a "citizen of the Cherokee Tribe," he would be eligible for tribal benefit programs, such as home loan and mortgage assistance, free financial advising, rental assistance, and health programs.  Pl.'s Mot. for Summ. J. 5-8.  In support of his application, Plaintiff asserted that the Cherokee Tribe included his ancestors on its 1880 census as "Native Cherokees."  Second Am. Compl. 2.

---

[1]     Plaintiff has also filed a motion for summary judgment.

[2]     This background is derived from Plaintiff's complaint and the exhibits to the motion papers.

On August 16, 2013, BIA rejected Plaintiff's application. ECF 32 Ex. 1, at 9. Plaintiff was able to establish his lineage to four ancestors - - Anderson, James, Betsy, and Jesse Reese - - who appeared on the Department of Interior's citizenship roll as enrollees who lacked an Indian blood degree. Id. In its letter of rejection, BIA stated that, when the Department of the Interior created an official citizenship roll for the Cherokee nation in 1906, Plaintiff's ancestors were enrolled as "Cherokee Freedmen," or freed Cherokee slaves of African descent. Id. As a result, BIA denied Plaintiff's request for a Certificate of Degree of Indian Blood. Id.

On September 13, 2013, Plaintiff filed an administrative appeal of BIA's determination. ECF 32 Ex. 1, at 1. BIA denied the appeal on January 6, 2014,[3] stating:

> For your information, when slavery was abolished following the Civil War, treaties were negotiated with the so-called Five Civilized Tribes. The treaties conferred citizenship in the Tribe on the Negroes who had been held in slavery by the Tribes. Such citizens are referred to as Freedmen. When the Final Rolls of those Tribes were prepared in 1906, separate rolls were made of the Freedmen and Intermarried Whites and both groups are shown with no blood degree. CDIBs [Certificates of Degree of Indian Blood] are not issued to these groups because they possess no Indian blood degree.

> Based on the records available to this office and the documentation provided by you in this appeal, the decision of the Deputy Tribal Government Officer is affirmed. This decision is based upon the exercise of authority delegated to this office by the Secretary of the Interior and is final for the U. S. Department of the Interior.

ECF 32 Ex. 1, at 6. In February 2014, and again in May 2014, Plaintiff requested that BIA issue a "revised Letter of Determination" reversing its denial, based upon Plaintiff's contention that his ancestors were listed on the Cherokee Tribe's 1880 census.

In June 2014, Plaintiff engaged the services of Curia Document Solutions LLC. According to a statement from its Litigation Support Manager, Curia Document Solutions is providing Plaintiff with "litigation support services," including designing, implementing, and maintaining "a litigation and Cherokee ancestry database of the by blood relatives of Abiodun Mohn in preparation for trial." Second Am. Compl. 32, Ex. 9, at 2-3.[4]

Plaintiff filed suit in this Court on March 30, 2015. Plaintiff filed an amended complaint on May 1, 2015, and a second amended complaint on December 30, 2015. On January 4, 2016, Plaintiff filed a "motion to admit new evidence," attaching three documents from BIA's Eastern

---

[3]    The BIA denial contains an apparent typographical error listing the date of the denial as January 6, 2013.

[4]    According to Curia Document Services' Litigation Support Manager's statement, the "litigation and Cherokee ancestry database" contains microfilm images of Cherokee censuses and rolls, United States censuses and rolls, and tribal enrollment cards, as well as statutes, case law, legal articles, treaties, constitutions, and legal codes. Second Am. Compl. Ex. 9, at 2-3.

Oklahoma Regional Office. The Court deemed Plaintiff's January 4, 2016 filing to be a motion for leave to amend his complaint to include the three attached documents, and on February 1, 2016, granted Plaintiff leave to amend his complaint.

Plaintiff claims that Thomas and Homer Needles, the Dawes Commissioner and an allotment clerk, "knowingly fabricated" the names of slave owners on the enrollment cards of his great-great-great grandparents, thereby "deliberately deceiv[ing]" the United States and his ancestors. Second Am. Compl. 3-4. He further claims that the Bureau of Indian Affairs continues to "deceive" him by refusing to grant him a Certificate of Degree of Indian Blood. Id. at 9. In his Second Amended Complaint, Plaintiff alleges that this "deceit" violates: 1) the Administrative Procedure Act, 5 U.S.C. § 706, Section 3 of the Act of April 26, 1906 (the "1906 Act"), Section 23 of the Act of July 1, 1902 (the "1902 Act"), and the False Claims Act, §§ 3729(a)(1)(A), 3729(a)(1)(B). Id. at 10-11. Plaintiff also references Section 19 of the 1906 Act but does not assert a claim under this section. Id. at 11. In his January 4, 2016 filing, Plaintiff further alleges that Defendant violated the Federal Tort Claims Act, 28 U.S.C. § 2674, and references 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), 28 U.S.C. § 1505 ("the Indian Tucker Act"), and Section 19 of the 1906 Act but does not assert claims under either statute. Pl.'s Mot. to Admit New Evid. 5, 22.

Plaintiff seeks compensatory damages in the amount of $600,000 to cover the costs of engaging Curia Document Solutions and for lost wages that Plaintiff claims were caused by depression and loss of employment stemming from Defendant's failure to recognize him as an ancestor of full-blooded Cherokees. Second Am. Compl. 32. Plaintiff also seeks injunctive relief in the form of an order directing the Department of the Interior to issue "certificates of degree of Indian blood" to Plaintiff and his descendants. Id. at 33.

## Discussion

Plaintiff must first establish subject-matter jurisdiction before the Court may proceed to the merits of the action. Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004). The Court must dismiss the action if subject-matter jurisdiction is found to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to the plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

The filings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers.'" Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs still bear the burden of establishing the Court's jurisdiction, and must do so by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2012), provides that this Court

shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract

3

with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act is not money-mandating, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). To establish jurisdiction, a plaintiff must seek money damages from a source of substantive law. "[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting Testan, 424 U.S. at 400); see Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008) ("[A] plaintiff must identify a separate source of substantive law that creates the right to money damages.") (internal quotations omitted).

## The Court Lacks Jurisdiction Over Plaintiff's Claims

Plaintiff names the following as Defendants: the Department of the Interior, Dawes Commission Chairman Tams Bixby, Dawes Commissioners C. Breckinridge and Thomas B. Needles, and Allotment Clerk Homer Needles. Second Am. Compl. 1. The only proper defendant in this Court is the United States. United States v. Sherwood, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); Del Rio v. United States, 87 Fed. Cl. 536, 539 (2009) (citing 28 U.S.C. § 1491(a)(1)).

Plaintiff alleges that the Department of the Interior violated the Administrative Procedure Act by enrolling his ancestors as "Cherokee Freedmen" instead of "Native Cherokees." Second Am. Compl. 23-24. To the extent that Plaintiff seeks judicial review of BIA's decision denying Plaintiff's application for a Certificate of Degree of Indian Blood, Plaintiff must bring that claim in district court. See Reilly v. United States, 93 Fed. Cl. 643, 650 (2010) (finding that the Court of Federal Claims lacks jurisdiction over Administrative Procedure Act claims, "as jurisdiction over claims relying upon that statute lies solely in the district courts"). It is well settled that the Court of Federal Claims lacks jurisdiction over claims under the Administrative Procedure Act. Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005); Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003); Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993).

Plaintiff further alleges that the Department of the Interior violated Section 3 of the 1906 Act by listing Plaintiff's ancestors as "Cherokee Freedmen" instead of "Native Cherokees," and by listing fictional people as his ancestors' slave-owners to perpetuate the deception. Second Am. Compl. 24-25. Plaintiff claims that Defendant's 2013 and 2014 denials of his application for a Certificate of Degree of Indian Blood constitute an ongoing violation of the 1906 Act. Id. at 25. However, this Court lacks jurisdiction over Plaintiff's 1906 Act claims because the 1906 Act is not a money-mandating statute. Section 3 of the 1906 Act sets forth the criteria for the enrollment of Cherokee Freedmen, stating, in relevant part:

The roll of Cherokee freedmen shall include only such persons of African descent, either free colored or the slaves of Cherokee citizens and their descendants, who were actual personal bona fide residents of the Cherokee Nation August eleventh, eighteen hundred and sixty-six, or who actually returned and established such residence in the Cherokee Nation on or before February eleventh,

4

eighteen hundred and sixty-seven; but this provision shall not prevent the enrollment of any person who has heretofore made application to the Commission to the Five Civilized Tribes or its successor and has been adjudged entitled to enrollment by the Secretary of the Interior.

Act of April 26, 1906, Pub. L. No. 59-129, 34 Stat. 137 (1906) ("1906 Act"). Because the 1906 Act does not give a litigant the right to sue the United States for damages, the 1906 Act cannot serve as a predicate for jurisdiction over Plaintiff's claim. See Jan's Helicopter Serv., Inc., 525 F.3d at 1306.

Plaintiff further claims that Defendant violated Section 23 of the 1902 Act by failing to enroll Plaintiff's great-great-great grandfather, Jesse Reese, as a Native Cherokee. However, Plaintiff has not alleged facts giving rise to a violation of this statute. Section 23 provides:

All Delaware Indians who are members of the Cherokee Nation shall take lands and share in the funds of the tribe, as their rights may be determined by the judgment of the Court of Claims, or by the Supreme Court if appealed, in the suit instituted, therein by the Delawares against the Cherokee Nation, and now pending; but if said suit be not determined before said Commission is ready to begin the allotment of lands of the tribe as herein provided, the Commission shall cause to be segregated one hundred and fifty-seven thousand six hundred acres of land, including lands which have been selected and occupied by Delawares in conformity to the provisions of their agreement with the Cherokees dated April eighth, eighteen hundred and sixty-seven, such lands so to remain, subject to disposition according to such judgment as may be rendered in said cause; and said Commission shall thereupon proceed to the allotment of the remaining lands of the tribe as aforesaid. Said Commission shall, when final judgment is rendered, allot lands to such Delawares in conformity to the terms of the judgment and their individual rights thereunder. Nothing in this Act shall in any manner impair the rights of either party to said contract as the same may be finally determined by the court, or shall interfere with the holdings of the Delawares under their contract with the Cherokees of April eighth, eighteen hundred and sixty-seven, until their rights under said contract are determined by the courts in their suit now pending against the Cherokees, and said suits shall be advanced on the dockets of said courts and determined at the earliest time practicable.

Act of July 1, 1902, ch. 1375, 32 Stat. 716 (1902) ("1902 Act").

This statute does not address the Department of the Interior's enrollment of persons as Cherokee freedmen. Instead, Section 23 addresses land allotment disputes between the Cherokee Tribe and the Delaware Indians who settled in Cherokee territory pursuant to an April 1867 agreement between the tribes. Del. Indians v. Cherokee Nation, 193 U.S. 127, 144 (1904) (finding that Section 23 of the 1902 Act "contemplates a determination of the rights and interest of the Delawares residing in the Cherokee Nation in the lands and funds of the Cherokee Nation under the compact of April, 1867"). This statute does not provide a basis for this Court to adjudicate Plaintiff's claim that the Government failed to enroll his ancestor as a Native Cherokee.

Finally, Plaintiff alleges that Defendant violated the False Claims Act, resulting in "the loss of over 140 years of profits derived from 475 acres of land rich in oil, gas and coal deposits, which according to federal law should have been appropriately held in federal trust as federally-protected . . . ." Second Am. Compl. 27. Plaintiff has not alleged conduct that falls within the scope of the False Claims Act - - which gives the Government and relators a cause of action. 31 U.S.C. § 3730 (2012). In any event, original suits under the False Claims Act must be brought in district courts.[5] Id. at § 3732(a); LeBlanc v. United States, 50 F.3d 1025, 1031 (Fed. Cir. 1995).

In his Second Amended Complaint, Plaintiff invokes Executive Order 12674 as an additional basis for his claims. Second Am. Compl. 8-11. The provision on judicial review, Section 504 of Executive Order 12674, "Principles of Ethical Conduct for Government Officers and Employees," states:

> This order is intended only to improve the internal management of the executive branch and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.

Exec. Order No. 12,674, 54 Fed. Reg. 15,159 (Apr. 12, 1989), as modified by, Exec. Order No. 12,731, 55 Fed. Reg. 42,547 (Oct. 17, 1990). Executive Order 12674 expressly precludes a cause of action against the United States and does not provide a jurisdictional basis for a suit against the Government in this Court.

In his January 4, 2016 filing, Plaintiff also invokes 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), 28 U.S.C. § 1505 ("the Indian Tucker Act"), and 28 U.S.C. § 2674 (the Federal Tort Claims Act), without alleging any specific violations. Pl.'s Mot. to Admit New Evidence 5. However, this Court does not have jurisdiction over civil rights claims brought under 42 U.S.C. § 1983, as Section 1983 confers jurisdiction exclusively on the district courts. 28 U.S.C. § 1343(a)(4) (2000); Osborn v. United States, 47 Fed. Cl. 224, 232 (2000) (citing Blassingame v. United States, 33 Fed. Cl. 504, 505 (1995), aff'd, 73 F.3d 379 (Fed. Cir. 1995)).

Section 1505 confers jurisdiction on the Court of Federal Claims to hear "any claim against the United States accruing after August 13, 1946, in favor of any tribe, band, or other identifiable group of American Indians" and is "not applicable to actions brought by individual Indians." 28 U.S.C. § 1505; Simmons v. United States, 71 Fed. Cl. 188, 191 (2006) (citing Grey v. United States, 21 Cl. Ct. 285, 292 n.7 (1990)). Because Plaintiff is suing as an individual, Section 1505 does not confer jurisdiction over his claim on this Court.

To the extent that Plaintiff seeks damages for depression and loss of employment, these claims sound in tort. Hernandez v. United States, 96 Fed. Cl. 195, 204 (2010) (finding that Plaintiff's allegations that the Government caused him mental pain, emotional distress, anxiety, and loss of employment constituted tort claims). It is well settled that the Court lacks jurisdiction over tort claims. The Tucker Act expressly limits this Court's jurisdiction to claims for damages "not sounding in tort." 28 U.S.C. § 1491(a)(1); see Rick's Mushroom Serv., Inc. v.

---

[5]     This Court has jurisdiction to entertain counterclaims of the United States alleging violations of the False Claims Act. See, e.g., Veridyne Corp. v. United States, 758 F.3d 1371, 1380-82 (Fed. Cir. 2014); Ulysses, Inc. v. United States, 110 Fed. Cl. 618, 636, 641-50 (2013).

United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort.") (citing 28 U.S.C. § 1491(a)(1)); Wood v. United States, 961 F.2d 195, 197 (Fed. Cir. 1992) (recognizing that the district courts have "exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act").

Finally, Plaintiff asks this Court to order the Department of the Interior to issue Certificates of Degree of Indian Blood to Plaintiff and his descendants. Second Am. Compl. 33. However, the Court lacks the ability to fashion the injunctive relief Plaintiff seeks. The Court is statutorily authorized to entertain claims for equitable relief in four narrow circumstances: 1) equitable relief under 28 U.S.C. § 1491(a)(2) "as incident of and collateral to" an award for money damages, including orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, 2) judgment in nonmonetary disputes arising under the Contract Disputes Act, 3) declaratory and injunctive relief in bid protests under 28 U.S.C. § 1491(b)(2), and 4) declaratory judgment relating to the class and status of certain organizations under the Tax Code, 26 U.S.C. § 7428. See James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998); Tetzlaff v. United States, No. 15-161C, 2015 WL 7585333, at *11 (Fed. Cl. Nov. 25, 2015). Because Plaintiff's request for injunctive relief does not fall into any of these categories, Plaintiff's motion for injunctive relief is denied.

### Conclusion

Because the Court lacks subject-matter jurisdiction over Plaintiff's claims, they are dismissed pursuant to Rule 12(b)(1). All other pending motions are dismissed as moot. The Clerk is directed to dismiss this action.

**MARY ELLEN COSTER WILLIAMS**
**Judge**